The next case for argument is 17-1295... Hey, stop talking while I do that. We've got another case. 17-1295 Wonderland Nurserygoods v. Baby Trend. Wow, I'd say this really is not about you. Good morning, Your Honors, and may it please the Court. We move from health care to child care, I think. Let me start this morning with what I think is common ground based on the briefing. And that is that if we're unsuccessful in convincing you today that the Board made unreasonable and erroneous claim interpretations, that at the very least we're entitled to a remand after the decisions in aquaproducts in this Court's panel decision in Bosch with regard to the contingent amended claims. Are we to assume that if we do not affirm the underlying decision that the amendment issue is condemned? I think that's right, because they are contingent amended claims. And they are contingent on us not being able to prevail, because those claims make explicit what we think is already explicit in the claims. And I'll turn to the two claim construction issues here. Turning to the merits of this appeal, the Board in this case adopted two claim constructions that effectively eviscerated the invention in this case, which is a baby crib with a singular insert that can be easily assembled and disassembled. The Board erred with the constructions of fabric member and enclosure member. The Board erred by holding that these members could be mere component parts of an enclosure rather than the enclosure itself. But the claim language requires a unitary enclosure member, because the claims by their expressed terms require that the member, in and of itself, be that which defines the area which contains a child. That can only be done by a unitary enclosure member. The point is this. A single piece of fabric that is only an incomplete part of an enclosure cannot contain a child, but that is what the claims, the specification, the drawings, particularly Figure 3, and the essential one of the essential purposes of the invention require of the fabric and enclosure members. This Court's decisions in NTP, PPC, Proxicon, Abbott Diabetes Care, and so many others, make clear that the broadest reasonable interpretation has to be consistent with the claims and consistent with the specification. What about Claim 15, the argument your friend makes that that suggests that the enclosure member doesn't necessarily include a plurality of side panels? Well, Claim 15 explicitly says an enclosure member including a plurality of side panels, contiguously connected to one another along edge portions, and surrounding an enclosed space adapted for receiving a baby therein. It's hard for me to see how Claim 15 doesn't make that just as clear as the other claims do, that the enclosure member itself has to be able to define, surround, as the term is used in Claim 15, the enclosed space for receiving a baby. I think the argument your friend is making is you wouldn't have had to put that line in Claim 15 if it were required or part of the earlier claim. I think what you see in these claims, which have been reexamined and reissued before this IPR proceeding, is that the same concept is defined in the claims in slightly different language. There are many ways to point out that a baby crib has a unitary insert that has sides that are between the corners and that can be easily inserted and replaced, perhaps for laundering purposes. Goodness knows I have young children. That was a big part of our younger days. Yes, Judge Newman, I'm sorry. Did you have a question? I thought you had a question. I'm sorry, Your Honor. I think Claim 15 makes the same point. Of course, Claim 15 is supported by exactly the same specification that discloses a single preferred embodiment. As I said, the specification itself is equally clear, that the fabric member in and of itself is what defines the baby holding enclosure. You can find that at A280, Column 1, as well both in the middle and below when the specific invention is being described. The construction that the Board offered, however, removed the enclosing requirement from these fabric and enclosure members and allowed the Wonderland claims to read on the Payson and Vianna references, which did not have such unitary structures. Under your view of the claim construction, would a quilt be a fabric member that met this limitation? A quilt would, you know what a quilt is, I assume, a patchwork of pieces of fabric sewn together that then constitute a single fabric member. Would that satisfy, under your version of the construction, this element? I think as long as the quilt that we're talking about, Judge Moore, is one that meets the other requirements of the claim and is the surrounding portion of the crib. And it would, of course, have to be unitary and meet at one side as well. But yes, I mean, obviously a fabric member, and of course the later claims in this that call for the side panels, talk about side panels that are contiguously connected to one another. Well, let's just say, but that's still defining what the member is. And the member is that single unitary thing that, again, I point you to figure three, it shows the single thing that comes in and goes back out. And that makes it really easy for parents who are holding a child in one hand to get the thing out and replace it. And Payson and Vianna each, which have netting and connectors and things, would not be a single unitary enclosure member or a single unitary fabric. That's right. Now, my friends try to make a lot out of Vianna, and in particular the Vianna figure one, and they try to say that that's teaching a unitary member. So the argument's been made that even if we're right about the unitary requirement that's set forth in the claims and specification, that Vianna discloses a unitary requirement. Well, that's not right, and I'll tell you why. For one, they try to read way too much into what a patent drawing is. This court's decisions in cases such as Hawkers and Halberstadt have consistently established that patent drawings are of little value because, and I quote from the case, they do not define the precise proportions of the elements and may not be relied upon to show particular sizes if the specification is completely silent on the issue. So if they're arguing that Vianno nonetheless may satisfy the element, even under your construction, and it's my understanding that that wasn't decided below, do we then need to reach the aquaproducts thing in an abundance of caution in the event that you need to maybe amend your claims because when you go back, maybe there's some sort of new fact-finding about Vianno? We certainly wouldn't be opposed to you saying to the board, as I think would be clear to them at this point, that their decision putting the burden on us has been vacated and is remanded if necessary. That's the main point of aquaproducts. But you agree that what you're asking for is that we remand it and the board would do an evaluation of the prior art? If there is a remand that's necessary, but of course we think that what we really have here is something that this court can decide as a matter of law because there's a simple failure of proof. You just told me that they have an alternative argument. If Vianno discloses a unitary member, even under your construction, that's a question of fact. How am I going to do that in the first instance on appeal? Well, Judge Moore, to be clear, my friends say that the board did reach this at page 171 of the appendix. And we pointed out in our briefs that the board has offered nothing but three conclusory sentences, which simply don't establish that on the face of Vianno, and we also don't have to shrink from the substantial evidence standard if you had to go that far. If you go to Vianno and look at the drawing, you will not see a unitary member. And it's not surprising. If we have to go that far, don't we, if we have a plain construction, don't we have to go that far? How can we not go that far? If they have an alternative argument that you still have a problem, even under your construction, how can I avoid reaching that? Oh, no, I don't want you to avoid reaching it. Quite the contrary, I want you to reach it, and I want you to conclude that there is not substantial evidence to support what my friends on the other side say was an alternative holding by the board at page 171. An observation with which you disagree. It is at least an observation. But it is one with which we not only disagree, but we believe that on the face of Vianno, on the face of what the board offered to support that observation, there is not substantial evidence, and so it would be a failure of proof on their side. But whether it's a—we'd be happy with a remand. We'd be thrilled with a reversal. Is the sentence that you're referring to on 171, that Vianno refers to netting as a single continuous member, including an upper edge that attaches— Right. That's exactly right. And we say that no reasonable person would accept that citation in the Vianno patent as supporting the proposition that it is said to support. If I could turn, unless the Court has further questions about the unitary enclosure, let me turn to the second construction error, which is the upright tubes issue. This is, of course, limited to Claim 15 and the claims that depend on it. If I can distill this issue to its essence, it is that the board decided that the upright tubes in Claim 15 did not have to be structural components of the crib, and that allowed it to read on the flexible corner pieces that were in the Bidwell reference. And all of the claim combinations required Bidwell for the upright tubes of Claim 15. And the board's decision with regard to upright tubes in Claim 15 was incorrect for four reasons. First of all, Claim 15 itself says that the upright tubes define corners of the baby crib. That's structural. Second, the specification, again disclosing a single embodiment, says that the bed frame structure includes four upright tubes. A person of ordinary skill would understand that the upright tubes referenced in Claim 15 are the same as the upright tubes in the other claims. And, in fact, that's consistent with this Court's decisions that say that the same term across multiple claims should ordinarily be read consistently. And that's Omega v. Ratick. And the upright tubes of Claim 15 that define corners of the baby crib and whose outer walls define an outer contour shape of the upright tube are no less structural than the upright tubes of the claims that use the term bed frame structure. They are all structural, and the board was wrong to rule otherwise with respect to Claim 15. Unless the Court has further questions, I'll let my friend stand, and I'll return for rebuttal. Thank you. Thank you. Thank you. Thank you, Your Honors. Good morning. As was pointed out, there are two independent reasons this Court can affirm the PTAB's finding of invalidity on all claims. First is to affirm the factual findings under the substantial evidence standard on the teaching of Viano and the combination of Viano with Payson. What did the board cite in Viano as meeting this limitation? So the board adopted— Let's look on page 171 of the board's opinion. That's where it is, right, the relevant part? Yes, the board adopted our position citing our briefing— Where? Citing our expert. Where? So looking at— This is only on the issue of whether or not it's continuous, whether or not under their claim construction, Viano discloses a single unitary enclosure member. So there are three sentences that have been cited in the briefing. It is the petitioner contends persuasively that Viano discloses a baby crib. We're at appendix 171 now, right? Yes. Which is page 37 of the board's opinion. Yes, so it just says, you contend persuasively it discloses a baby crib with a bed frame, including four upright posts and continuous fabric netting connected to inner surfaces of tubular post 10 as discussed above. And then it says, Viano refers to netting 32 as a single continuous member, including an upper edge that attaches at 34 to annular bumper 36, yada, yada, yada. And the site there is exhibit 1021. I assume that's Viano. It is. Column 2. Column 2 lines 9 to 4. Very confusing. I'm looking at column 2 line 9 to 4. Am I wrong? Is that a little confusing to you as well? Because isn't that a description of figure 3? It's column 2 lines 9 to 14. What am I missing? Yeah. So columns 2 line 9 to 14. What page of the appendix does that appear on? Just so I'm on the right page. I want to make sure I'm not missing something. 7920. 7920? Yes. Just following the grade on it. Okay. 7920. Okay. So what is it in 9 to 14 that tells me it's a single unitary enclosure? So the PTAB was looking at the use of netting and the use of net, as opposed to a description of net sections, as they have explained in their opinion. So they did look at figure 1, and they also looked at this section of the specification. They also looked at, in referring to our petition, pages 20, 32 to 40, they were citing to our expert evidence by Mr. Campbell and his finding. They weren't citing to your expert evidence. They don't cite to your expert evidence anywhere in this board opinion. Well, they do when they are talking about as discussed above and citing to our petition. When you contend persuasively and then they cite your petition, you now say that, as a lawyer, I should interpret that as them relying upon your expert declaration. Yeah, that was part of our contention. Our argument in our petition was using our expert evidence. That is the evidence in the case. I've read about a million board decisions, and when they intend to rely on an expert, when they intend to go outside the confines of the document and move to the reliance on extrinsic evidence, they have always said so expressly. I've never seen a case where anyone has ever argued to me that reference to arguments made in someone's brief is the board's express adoption of something said by an expert. That's really a reach. Well, this is their decision, is adopting our argument in their citation to Viano. The other evidence that is of record can be used by this court, and that does include the Campbell Declaration. So the evidence that was available was the Campbell Declaration. So I don't view the Campbell Declaration as having been relied upon by the board as a basis for making this fact-finding. You're telling me I can nonetheless affirm this fact-finding by looking at that additional evidence that was in front of them? I'm sorry, I didn't catch the first part. If I don't interpret this opinion as relying upon the Campbell Declaration, are you saying I, at the appellate court, can nonetheless do that? Can still affirm, yes. On that basis? Yes. Is the citation in the middle of the paragraph that you were referring to on Appendix 171, it cites Petition 20 and then pages 32 to 40. Is that where you're saying the petitioner itself relied on the expert testimony? Is that what we're talking about? Yes. Yes, and then beyond relying on our arguments, they went beyond that in looking at Viano, looking at the use of net and netting, and describing how it is attached, the same all the way around, as well as what it is that you see in Figure 1. Now the other side of the evidence here is that this argument that has become the critical factual dispute in this appeal, the only basis that Wonderland has for raising this issue on appeal is a single sentence that Wonderland provided in its patent owner response. Let me read that sentence. Wonderland said, It is not clear from anything in Viano that the netting 32 is even a continuous member. That is the only thing that existed in the record prior to the hearing at the PTAB that they were contesting anything about Viano. No details at all. No discussion of Figure 1. No discussion of the specification. That is it. So as we pointed out, we think that this issue has been waived by them, or at best for them, they have a mere skeletal argument that has no detail, and the discussion by the PTAB in the decision is more than commensurate with what it is that Wonderland raised in the record. At the oral argument, you have the opinions from the majority. They addressed this question with Wonderland's counsel looking at Figure 1, and we have in the record the transcript of looking at Figure 1 and saying, Yes, you can see the lines touching. You can see that this is a continuous number. So under the substantial evidence standard, you have these judges making the factual finding, looking at Figure 1. They have the Campbell Declaration, whether you include that as a basis of their decision or not, and they went beyond that, and they looked at the specification of Viano, looked at the discussion of the net, of the netting, that that is described as a singular member, and found a factual finding here that it is a unitary continuous member. And even under Wonderland's claim construction, that factual finding, once affirmed under the substantial evidence standard, ends this appeal because then there is no question that all of the claims are invalid under the combination of Viano and Payson. Now I will add they do have... Just out of curiosity, one of the arguments they make is that when you look at Figure 1 and Viano, the mesh lines don't line up. It makes it less clear to me that it's a single continuous piece of netting when at the corners you don't have mesh that lines up with each other in the figure. What do we make of that? So when you look at Viano, it is not a single piece of fabric that you started out, and it was the length of four side panels long that you wrapped all the way around. So it would be four side panels, and those four side panels are connected to each other at their edges. You can see as you look at Figure 1, and this is the factual finding. This is not a finding that this panel, in all due respect, can re-weigh under the substantial evidence standard. The majority looked at this and found that those lines, even though they were irregular-shaped coming in, they were still crossing over each other, showing that those side panels... Where did they find that? They addressed that during the oral argument. Wait, is it in the opinion? It is not in the opinion, but the first time that issue... So am I supposed to accept something that you represent to me from an oral argument as a board fact-finding? My point is that before the oral argument, the only thing that was raised by Wonderland, what it is, the only thing that the PTAP panel had to address, based on the record, was one sentence from Wonderland. It is not clear from anything in Viano that the netting 32 is even a continuous member. I don't know why that's not enough. But then what is the level... It's their obligation to say what about the prior art references, or what about the claims is lacking in the prior art references, and they're telling you, here's our claim construction, and this is what's lacking in Viano. That's one of the things lacking. They alleged other things as well, but I don't know what more you want. To put the PTAP panel on notice of addressing specific arguments, such as... Assume I think they did. Assume I think they put the PTAP on notice sufficiently that that argument is not waived. I don't see how the PTAP addressed this issue. I'm finding it really hard to understand how this is a single piece enclosure when the lines don't match up in the picture. The lines don't match up because they're separate side panels, but the lines do meet at that back post. You can see those lines meeting, and that, once again, is a factual... Again, the PTO didn't say that, in its opinion. Well, the only time they were specifically... The only time that specific issue was raised... It doesn't make any sense to me. I'm sorry? Not only did they not say it, but the argument doesn't make any sense to me that the lines line up. No, they don't. There are lots of places where they don't line up. I can look at the figure. This is not really complicated. I mean, there's lots of places where the lines don't line up. I don't understand. But they line up at several places going down there, and this is a... They line up at some places, but it seems to me a fact-finding of that nature would not be supported by substantial evidence based on Figure 1. So unless you've got something else, I don't see how that PTO could reach that fact-finding based on that argument. Well, they reached it, and they had... No, they didn't. They had support. Well, they did find that it was unitary, and they have, in their opinion, adopting our arguments, citing to the petition where we were the only side that had... We were the only side that had expert testimony on what a person of ordinary skill in the art, how a person of ordinary skill in the art would view Viano. Wonderland had a lengthy, robust expert report, but did not have its expert opine on this issue of looking at Viano and making a determination whether it was continuous. They were completely silent on that. So the only evidence that exists, in addition to Viano, is the expert report. I'm really confused. I mean, this is not complex technology. What in the world could your expert possibly have said about Viano when you've got two pieces that don't line up to nonetheless convince the world that they do? I mean, that sounds like bought-and-paid-for testimony to me, if that's what he said. I don't understand what is technical about this that would require an expert, and would require... And that's probably why the PTO didn't cite any in his opinion, because you don't need to outside the patents in this case. Well, and you have two PTAB judges who also found the same thing looking at it, and their thoughts, while it wasn't in the opinion, is clearly stated in the transcript, because the first time they were faced with this issue by Wonderland was during the oral argument. So there's a commensurate piece to this of Wonderland raised this at a high issue of is not clear from anything in Viano that the netting is even a continuous member. Addressing that statement, that is what the PTAB did. It adopted our arguments, and it went further, and it looked at the specification, and it talked about the net and netting being used as singular as opposed to plural members. And, for example, in the out-dry case that issued after the briefing in this case, you have adoption of our arguments. You have citation to specific evidence, and you have a discussion of that evidence, and those are factual findings. And you have two PTAB judges, so you have reasonable minds who have just looked at this and made the factual determination on all of that that Viano has a unitary member. And with that factual finding, all of the claims are invalid. Is it your view that their claim construction is satisfied if Viano has four separate side panels, unlike a quilt? That's why I asked him my quilt example, a quilt where lots of little pieces are strewn together and then it goes all the way around. Is it your view that their claim construction would be satisfied by four separate side panels that each attach independently to the posts but aren't something that could be taken off as a single unitary piece of fabric, for example? Not taken off as a single unitary... Or put on as a single unitary piece. Is it your view that four side walls, which just each attach to the post, meet their claim construction? Because I don't think it does under their claim construction. No, not under their claim construction or what the PTAB panel was looking at. But isn't that your view of Viano? I thought your view of Viano was they meet at the posts and that each side panel is connected to the post. Each side panel is connected to each other because you see those lines crossing each other based on the use of net and netting being singular are the factual findings made by the PTAB. And then in the combination... The question then in Viano is there is no disclosure of how it's been attached to the vertical post. And so that is what really... That's what a lot of the argument was about at the PTAB and that is passed over here for the most part is then how do you attach that? Because Viano is silent. And Payson provides that well-known cater connection. And a person of ordinary skill in the art would... And there are factual findings on this, on why it is that in making that combination, the person of skill in the art would maintain the continuous panel of Viano so that you still have that exposed to look. And they would use the cater connection of Payson so that you maintain the continuous enclosure. And there are findings by the PTAB on that that were not addressed at all by Wonderland in the briefing. And once again, those factual findings on why a person would have combined Payson and Viano in the way the PTAB found, those are all factual findings reviewed under the substantial evidence standard. If I can, I know I'm out of time, but if I could talk a bit about claim construction. Just a couple of brief statements because we really are out of time. Yes, thank you, Judge Gross. So on claim construction, there is a very rich, intrinsic record here that when you look at what happened during the prosecution, we have a unique insight into looking at various claim limitations that Wonderland included in claims during prosecution. For example, Claim 8, where they had the formed-in-a-single-body limitation, they had a plurality of side panels joined to one another limitation, and they decided to take those out because they were not needed to define over the prior art. So for this unitary issue, Wonderland, in addition to what you see in Claim 15, what we can see in Claim 8 during prosecution, limitations that went right at this single unitary issue that were in the claims... On your claim construction argument, then I think you also need to consider the requested amendments, which may or may not resolve the deficiencies that you're pointing out in claim construction. Isn't that accurate? The requested amendments... I'm sorry, in the motion to amend? I'm sorry, in the motion to amend at the IPR? Something that we will need to reconsider, I believe, in view of the statutory... the decisional change that's referred to in the amendments. Right, the aquaproducts case. Yes. Yes. Yes, agreed. And there has not been briefing on the motion to amend in large part because of the uncertainty surrounding aquaproducts. Would that resolve your claim construction concerns? Looking at the limitations that they included in those claims in the motion to amend? Yes, but perhaps that isn't before us, but perhaps appropriate procedures are appropriate so that it is the evolution of the case. So, Judge, in answering your question, I think the motion to amend is very insightful into this claim construction issue because, similar to what happened with Claim 8 in the prosecution leading up to the issuance of the patent, where there were terms in the claims focused on single and unitary and taken out, in the motion to amend, you have the same thing happening where additional limitations are being put in for single and unitary. So those claims do get to single and unitary, but they don't do it just through enclosure member or fabric member. They do it by the additional language that Wonderland knew all along through the prosecution leading up to the issuance of the patent that it could add to have the single unitary requirement. Okay. Thank you, Judge Rose. Thank you. I have four very quick points, Your Honor. First, with regard to the last colloquy that you had with my friend, the prosecution history arguments are answered at pages 22 to 24 of our reply. With regard to the Claim 8 issue that he's raised, his position is, effectively, that the examiner allowed the claims after we broadened them, which is passing strange to me. In fact, what happened was that we moved from a where-in clause, which is sometimes not treated as a claim limitation, a limitation that made exactly clear the unitary limitation, and that put that into the body of the claim, and then the claim was allowed. But again, that's answered pages 22 to 24 of our reply. Second, the Campbell Declaration. Judge Moore, you had quite a conversation with my friend. This lengthy, robust expert report may be lengthy. I would question whether it's robust, and it's not cited by the board. That's exactly right. But if it had been cited by the board, the only thing that could have cited was page A7594-95, paragraph 80. And what will you see in paragraph 80? Exactly the same conclusive restatement that was contained in their petition and that's contained in the board's decision. That is not substantial evidence. It can't support the board's finding here. The single sentence that we supposedly made that was not enough, my friend, I think, forgets that it was his burden and his client's burden to prove the unpatentability of our patent and to come forward with sufficient, substantial evidence to take away our patent. We're not required to prove a negative. Judge Moore, you were exactly right. That was enough. The dissent and the majority both recognize this issue as raised and joined, so if the suggestion now is that we somehow waived that argument by not making it in sufficient detail for him, that argument is not well taken. It's unsurprising in this case that any of the things that were cited by the board about Viano do not support the propositions that they're cited for. Viano's whole point was to create a foldable floor. The particular configuration of the netting was of no interest to that patentee, and the language out of column 2 of Viano's specification, as well as the complete mismatch of the very rough drawing in figure 1 certainly does not create the sort of substantial evidence that can support this finding. Finally, my last point is that, and I think this may be gilding the lily at this point, but even if Viano were in somehow or another found to be unitary, as we've pointed out at page 14 of our reply brief, with citations to appendix pages 5816 and 5817, the combination of Viano and Passon still wouldn't give our claim because Passon only discloses single-side panels that are connected by separate rods, so it wouldn't even be the quilt, Your Honor. Unless the court has further questions for me, I thank you for your time. I'll give you back the last minute. We thank you both sides. The case is submitted.